J. T. GIBBONS, INC., Plaintiff and Appellant, *v.* FRANCISCO PICÓ PIÑÁN, k/a FRANK PICÓ, Defendant and Appellee.

No. R-63-62.     Decided February 17, 1964.

*Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira,* and *Nicolás Jiménez* for appellant. *Arnaldo P. Cabrera* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On June 10, 1960, and in the Superior Court of Puerto Rico, San Juan Part, appellant filed an amended complaint against León Lewis and Frank Picó, alleging that defendants-appellees, acting under the name of Picó-Lewis Company, had bought from it merchandise in the amount of $16,058.28, which they have not paid for, despite the demands made for payment and that defendants-appellees are jointly and severally bound to answer for said debt. On June 23, 1960 León Lewis and Frank Picó were summoned separately.

On June 29, 1960 defendant León Lewis filed his answer to the complaint, alleging that Picó-Lewis Company was a partnership established with legal status apart and separate from its partners and the partnership's debts were not the partner's debts and much less of the party appearing herein; that the partnership filed a bankruptcy proceeding in the United States District Court for the District of Puerto Rico, and in said proceeding plaintiff J. T. Gibbons was included as a creditor, and the discharge was granted to the partnership Picó-Lewis Company as to its debts, including that of plaintiff herein. On May 9, 1962, after a series of incidents which need not be considered in the decision, defendant Frank Picó filed an answer to the complaint denying that he was jointly or severally bound to answer for the partnership's

debt for certain reasons which shall be stated in the relation of facts stipulated in a pretrial conference.

It is fitting to state that on May 19, 1961 appellant J. T. Gibbons, Inc., filed in the court of first instance a notice of voluntary withdrawal with prejudice, alleging that appellant was not interested "in prosecuting this case as far as it concerns codefendant León Lewis." In view of said request the trial court rendered judgment on July 3, 1961 sustaining the voluntary withdrawal with prejudice "as to defendant León Lewis."

In the pretrial conference held on June 4, 1962 the following facts were stipulated and they were admitted: (1) That defendants Francisco Picó Piñán and León Lewis established a partnership on June 11, 1954 by public deed No. 14 of said date before Notary Milton F. Rúa, for the purpose (object) and conditions (form) specified therein; (2) that the partnership deed was not recorded in any Mercantile Registry in Puerto Rico; (3) that J. T. Gibbons, Inc., sold to Picó-Lewis Company merchandise for a definite amount which on the date of filing of the complaint was $16,058.28; (4) that on November 14, 1958 the partnership Picó-Lewis Company requested to be admitted to what is known as an arrangement proceeding under Chapter II of the Federal Bankruptcy Act in the United States District Court for the District of Puerto Rico and that at the proper time a discharge was granted to the partnership as well as to the different creditors in case No. B-74-58 in said court; (5) that neither of the two partners personally resorted to said proceeding nor were involved or went into bankruptcy within the proceeding; (6) (amending the order of June 20, 1960) "that upon liquidation of the partnership Picó-Lewis, León Lewis was in charge of all its assets"; (7) that the question in litigation in the present case "is limited to (deciding) whether said partnership was civil or mercantile, and as to

whether the members of said partnership are liable, as a question of law, for its debts."

The trial court reached the conclusion that the partnership Picó-Lewis is a civil partnership and, therefore, its partners are not personally liable or are severally bound for its debts. On the contrary, appellant maintains that it is a mercantile partnership and the appellee partner has unlimited liability.

According to its deed of constitution, the partnership Picó-Lewis was established by a farmer, Frank Picó, and a merchant, León Lewis; its object was evident: "to establish an agricultural partnership which shall be engaged in Puerto Rico to the purchase and sale of cattle, horses, swine, poultry, for slaughter, and including, without any limitation whatsoever, all other branch or activity related to the development of the agriculture and cattle industry, agricultural or similar activities"; its capital is composed of $35,000 and each partner contributes $17,500 in cattle, which they had acquired prior to the constitution of the new agricultural partnership; and to carry on the purposes of the partnership it is authorized to "lease or sublease farms, buy, sell, encumber, alienate them or in any form or manner dispose of them by itself or through its partners, and likewise, it shall have all the ample and necessary authority which by law corresponds to it to own personal or real property related to the purposes for which it has been created"; the administration of the partnership "shall be in charge of both partners, who shall have the authority to draw against bank accounts, sign for the partnership and represent it in all proper and adequate activities for the lawful purposes of the partnership which has been constituted by the deed 'and' each partner acting on behalf of the partnership shall sign with his full name, stating that he does it on behalf of the partnership and its authority is extended to all acts of administration and ownership, purchase and sale transactions, mortgages, and any other kind of alienation or encumbrance, granting of

general powers and representation in all kinds of litigations."

As to profits and losses, the following is agreed upon: "The profits, if any, shall be distributed wholly or partly, annually, by mutual consent between the partners and at the termination of each year of partnership duration, or the distribution of profits may be postponed to a subsequent date." Since Picó is supposed to devote all his time to the development, management and benefit of the partnership, a weekly salary of $150 from the partnership's profits is assigned to him, and since Lewis may devote all his time and activity to any other private business, distinct and separate, said activities will not be a part of the partnership and Lewis' properties shall not answer for the debts of the partnership beyond the capital contributed of seventeen thousand five hundred dollars. At the time of the dissolution of the partnership either because of the expiration of the term for which it was constituted, or for any other reason, the debts shall be liquidated first, then each partner shall be paid his share proportionately to the capital contributed and if there should remain any profit it shall be distributed equally between the partners.

■ Considering the *object* for which this partnership was created it is unquestionable that it is an agricultural partnership of a civil nature and considering its clauses of partnership retribution, the contract executed is one of universal partnership of profits—§ 1566 (1930); 11 Manresa, *Comentarios al Código Civil Español* 324, 328 (5th ed. Reus 1950).

■■ Puig Peña finds the distinction between civil partnership and mercantile partnership in the distinction made by the very Codes between the *object* and the *form* of said partnerships: "This question has also been widely discussed and, actually, the commentators have not yet reached a unanimous criterion to decide it. Dispensing with the criteria of professionals and the intention of the contracting parties,

the authors—as well as the legislation—have sought a separation between the civil and mercantile partnerships, resorting mainly to a criterion of form or of substance or object, according to the nature of the operations in which they are engaged. The Code of 1829 adopted the pure objective criterion (§ 264); but the one in force decidedly favors the system of form in stating that the 'articles of association by which two or more persons obligate themselves to place in a common fund any property, industry or any of these things, in order to obtain profit, shall be commercial, no matter what its class may be, provided it has been established in accordance with the provisions of this Code' (§ 116). This criterion of form would have decidedly prevailed in our law if it had not been for the provision of § 1670 (1561 ours), according to which, 'civil partnerships, on account of the objects to which they are devoted, may adopt all the forms accepted by the Code of Commerce.' Pursuant to this provision, the criterion of form no longer prevails because the mercantile *propio sensu* as well as the civil partnership may adopt the commercial form. The objective criterion therefore prevails, it being also, without doubt, the most logical and the one followed by the majority of the commentators. But since, on the other hand, the jurisprudence of the Supreme Court does not want, in some premises, to dispense with the criterion of form, a combined point of view is adopted in our Law, pursuant to which the following distinctions may be established:

(a) Civil partnerships by their nature, which adopt only one form merely civil. These are civil partnerships properly speaking.

(b) Mercantile partnerships by their nature, which adopt a typically mercantile form. These are the mercantile partnerships which are clearly governed by our Code of Commerce.

(c) Mercantile partnerships by nature, but not established pursuant to all the provisions of the Code of Commerce. Said partnerships are governed solely by common legislation, the pure criterion of form prevailing in this case (July 5, 1940).

(d) Partnerships exclusively of a civil nature, but which have adopted some of the forms recognized by the Code of Commerce. It is in this case where the objective criterion acts properly. Consequently, in spite of the mercantile appearance, the partnership shall be civil provided that, *because of its object*, [italics in the original] it is engaged in non-commercial transactions (*agricultural, cattle*, mining, fishing *industries, etc.,*) as a general rule. . . ." (Italics ours.) IV-II Puig Peña, *Tratado de Derecho Civil Español* 367–368. (*Revista de Derecho Privado* 1951 ed.)

The contractual modalities on which appellant bases its contention to allege that the partnership is mercantile are the following: (1) that the partnership was constituted by public deed; (2) that partner Lewis' liability was limited to the capital contributed; (3) that the purchase and sale of cattle was included among the objects of the partnership.

(1) The public deed may be used indistinctly for a civil as well as for a mercantile partnership, and in case one of the objects of the partnerships is to acquire real property for the partnership, the reproduction by deed clearly stating the powers of the partners for such acquisition is indispensable. (2) As to the limitation of liability of partner Lewis to the capital contributed, although said agreement has the appearance of a limited mercantile partnership within a civil partnership of profits it does not alter at all the object of the agricultural partnership. Furthermore, this is a case of a previous agreement, so common in statutes of civil partnerships, to prevent the usufruct of the personal and real property which each of the partners may possess at the time of the agreement from passing to the partnership pursuant to

§ 1566 of our Civil Code. As clearly stated by Manresa: "The common enjoyment of the profits, as well as the usufruct of the partners' private property, corresponds as of *right* to the partnership and, therefore, no special clause whatsoever is necessary, since they come into the partnership as of course by the mere fact of its constitution. On the other hand, in order to exclude any one of them, a previous agreement would then be necessary because the precept of the law comprises expressly and definitively all of them." (3) As to the sale of fruits and products of the cattle, it suffices to remember that, pursuant to § 244 of our Code of Commerce, the same is not considered commercial.

The partners' liability being limited in a civil partnership to the property contributed to the same—Puig Peña, *op. cit.* at p. 390—and the civil partnership's property having been adjudicated to the different creditors in a bankruptcy proceeding, the judgment will be affirmed.